UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ROBERT WATERBURY,

        Plaintiff,

   v.

UNITED PARCEL SERVICE, and DOES
1 through 5, inclusive,

        Defendant.

CIV. NO. 2:12-1911 WBS CKD

MEMORANDUM AND ORDER RE:
MOTION FOR SUMMARY JUDGMENT

----oo0oo----

Plaintiff Robert Waterbury brought this action against his employer, defendant United Parcel Service, alleging claims under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 et seq.  Defendant now moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56.

I.   Factual Background

Plaintiff was hired by defendant in 1989 and became a full time driver in May 1991.  (Leonard Decl. ¶ 3 Ex. A (Pl.'s Dep.) at 53:7-54:18 (Docket No. 18-1).)  In November 2010, plaintiff began experiencing pain in his left knee.  (Pl.'s Decl. ¶ 4 (Docket No. 17).)  Plaintiff submitted a worker's

1

1  compensation claim on November 15, 2010, (Pl.'s Dep. at 112:20-

2  113:1, Ex. 8), and thereafter received an examination by Dr.

3  Michael Cohen, M.D., (id. at 105:14-19).  Although Dr. Cohen

4  initially released plaintiff to full duty, (id. at 118:22-25;

5  119:1-4, 22-25), plaintiff returned to Dr. Cohen on December 1,

6  2010, and received a restriction that he should not lift anything

7  over twenty pounds, repeatedly climb stairs, or operate a manual

8  transmission vehicle.  (Id. at 120:16-122:4, Ex. 12.)  Defendant

9  placed plaintiff on light duty, and, when light duty work was

10  exhausted, plaintiff received a leave of absence, during which

11  time he received worker's compensation payments.  (Id. at 105:20-

12  107:14; Bullen Decl. ¶¶ 3-4 (Docket No. 13-5).)

13       On January 19, 2011, plaintiff returned to work in his

14  normal position as a driver, after receiving a work status report

15  from Dr. Cohen that released him to full duty.  (Pl.'s Dep. at

16  134:15-135:25, Ex. 16.)  However, plaintiff continued to

17  experience knee pain, and, at the urging of his supervisor,

18  returned to Dr. Cohen for evaluation on January 24, 2011.  (Id.

19  at 136:11-137:25.)  Dr. Cohen issued a work status report

20  limiting plaintiff to lifting and carrying under forty pounds and

21  restricting repetitive left knee extensions.  (Id. at 138:14-

22  140:18, Ex. 17.)  Plaintiff received another leave and worker's

23  compensation payments, (id. at 141:3-7), until Dr. Cohen released

24  him to full duty on February 17, 2011, (id. at 147:16-148:17.)

25       On March 2, 2011, Dr. Raad Al-Shaikh, M.D., evaluated

26  plaintiff and issued a note that indicated he could "[r]eturn to

27  full duty with no limitations or restrictions" but would "require

28  an automatic truck."  (Pl.'s Dep. at 166:1-24, Ex 22.)  However,

2

1   after defendant expressed confusion over whether plaintiff was

2   able to operate a manual truck, Dr. Al-Shaikh submitted a revised

3   note stating that plaintiff could "[r]eturn to full duty with no

4   limitations or restrictions" but he "recommend[ed] an automatic

5   truck."  (Bullen Decl. ¶ 5, Ex. 2.)

6        On March 15, 2011, plaintiff delivered a letter to

7   defendant requesting that he be provided with an automatic

8   transmission vehicle.  (Pl.'s Dep. at 111:11-14, 179:19-180:13,

9   181:4-9, Ex. 26.)  According to plaintiff, he had made three

10  previous oral requests for an automatic transmission vehicle,

11  (id. at 165:4-13), and was told that he needed to fill out

12  specific forms, (id. at 153:12-154:5).  Plaintiff received

13  defendant's accommodation packet sometime between late March and

14  early April.  (Cavil Decl. ¶ 4 (Docket No. 13-6); Pl.'s Dep. at

15  182:10-25, Ex. 27).

16       Plaintiff objected to various provisions in the packet

17  and expressed these concerns to defendant on multiple occasions

18  between March and April 2011, (Pl.'s Dep. at 184:16-188:25,

19  190:2-25, 194-:16-195:2, Ex. 29), during which time defendant

20  responded that it needed to receive the paperwork in order to

21  process plaintiff's request.  The process broke down in late

22  April or early May after defendant sent plaintiff a letter that

23  it considered his request to be withdrawn.  (Id. at 208:7-18,

24  209:2-210:20, Ex. 31.)

25       As a driver with seniority, plaintiff had the ability

26  to decline work on his scheduled days if the workload for the

27  area did not require all drivers to be on duty.  (Id. at 241:14-

28  22.)  After discussion regarding his accommodation request broke

3

1   down, plaintiff began to exercise this right and decline work on

2   days when he was assigned a truck with a manual transmission.

3   (Id. at 241:14-243:23.)  Plaintiff exercised this right on about

4   eighty occasions between April 2011 and February 2012.  (Boughton

5   Decl. ¶ 5 Ex. 4, Interrogatory response no. 4 (Docket No. 13-4).)

6   Still, plaintiff drove a manual transmission truck on most days

7   because, as plaintiff estimated, an automatic truck was available

8   on only three occasions.  (Pl.'s Dep. at 242:14-243:2.)

9          On January 31, 2012, plaintiff visited Dr. Cohen, who

10  issued a work status report that restricted plaintiff to use of

11  an automatic transmission vehicle.  (Pl.'s Dep. at 222:11-224:7,

12  Ex. 36.)  Plaintiff received a medical leave of absence and did

13  not work until February 15, 2012, when he received another work

14  status report from Dr. Cohen that released him to full duty.

15  (Id. at 224:27-226:8, Ex. 37.)  On February 15, plaintiff also

16  filled out defendant's accommodation forms, with medical

17  information submitted by Dr. Cohen, and the provisions plaintiff

18  found objectionable marked out.  (Pl.'s Dep. at 226:9-24, 230:25-

19  232:22, Ex. 38.)  After defendant received the form and held an

20  informal meeting with plaintiff, plaintiff was provided with an

21  automatic truck on a permanent basis.  (Pl.'s Dep. at 232:23-

22  235:14.)  Plaintiff presently continues to drive an automatic

23  truck.  (Id. at 155:2-4.)

24         Plaintiff filed a complaint in state court on June 20,

25  2012, bringing claims under FEHA for (1) disability

26  discrimination, and (2) failure to accommodate and failure to

27  engage in an interactive process.  (Notice of Removal Ex. A

28  (Docket No. 2).)  On July 11, 2012, plaintiff filed a First

4

1  Amended Complaint ("FAC") alleging the failure to accommodate and

2  failure to engage in an interactive process as separate claims.

3  (Id. Ex. C.)  On July 19, 2012, defendant removed the case to

4  federal court based on diversity jurisdiction.  (Docket No. 2.)

5  Defendant filed the present motion for summary judgment on

6  December 16, 2013.  (Docket No. 13.)

7  II.  Evidentiary Objections

8        On a motion for summary judgment, "[a] party may object

9  that the material cited to support or dispute a fact cannot be

10  presented in a form that would be admissible in evidence." Fed.

11  R. Civ. P. 56(c)(2).  "[T]o survive summary judgment, a party

12  does not necessarily have to produce evidence in a form that

13  would be admissible at trial, as long as the party satisfies the

14  requirements of Federal Rules of Civil Procedure 56." Fraser v.

15  Goodale, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting Block v.

16  City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001))

17  (internal quotation marks omitted).  Even if the non-moving

18  party's evidence is presented in a form that is currently

19  inadmissible, such evidence may be evaluated on a motion for

20  summary judgment so long as the moving party's objections could

21  be cured at trial.  See Burch v. Regents of the Univ. of Cal.,

22  433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006) (Shubb, J.).

23        Defendant raises fourteen objections to statements in

24  plaintiff's declaration and objects to all six exhibits attached

25  to the declaration submitted by plaintiff's counsel.  (Docket No.

26  19-1.)  Most of defendant's objections to plaintiff's declaration

27  are on the basis of lack of foundation, speculation, or

28  relevance.  These are all duplicative of the summary judgment

1  standard itself, as a court can award summary judgment only when

2  there is no genuine dispute of material fact.  See Burch, 433 F.

3  Supp. 2d. at 1119–20.  Statements made without personal knowledge

4  are not facts and can only be considered as arguments, not as

5  facts, on a motion for summary judgment.  Instead of challenging

6  the admissibility of this evidence, lawyers should challenge its

7  sufficiency.  Objections on any of these grounds are superfluous,

8  and the court will overrule them.  The court does not rely on the

9  evidence defendant characterizes as hearsay, and will therefore

10  overrule that objection as moot.

11       Defendant also objects to excerpts of deposition

12  transcripts attached as exhibits to the declaration of

13  plaintiff's counsel, raising the issues of authenticity and lack

14  of foundation because the exhibits do not include the Court

15  Reporter Certificate.  The parties have provided the court with

16  full certified copies of the deposition transcripts that include

17  the court reporter's certificate, however, so the court will

18  overrule these objections as moot.  The court will also overrule

19  as moot defendant's remaining objections to exhibits to the

20  declaration of plaintiff's counsel because the court does not

21  rely on these exhibits for the purposes of this Order.

22  III. Discussion

23       Summary judgment is proper "if the movant shows that

24  there is no genuine dispute as to any material fact and the

25  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

26  P. 56(a).  A material fact is one that could affect the outcome

27  of the suit, and a genuine issue is one that could permit a

28  reasonable jury to enter a verdict in the non-moving party's

6

1   favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

2   (1986).  The party moving for summary judgment bears the initial

3   burden of establishing the absence of a genuine issue of material

4   fact and can satisfy this burden by presenting evidence that

5   negates an essential element of the non-moving party's case.

6   Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

7   Alternatively, the moving party can demonstrate that the non-

8   moving party cannot produce evidence to support an essential

9   element upon which it will bear the burden of proof at trial.

10  Id.

11      Once the moving party meets its initial burden, the

12  burden shifts to the non-moving party to "designate 'specific

13  facts showing that there is a genuine issue for trial.'"  Id. at

14  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

15  the non-moving party must "do more than simply show that there is

16  some metaphysical doubt as to the material facts."  Matsushita

17  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

18  "The mere existence of a scintilla of evidence . . . will be

19  insufficient; there must be evidence on which the jury could

20  reasonably find for the [non-moving party]."  Anderson, 477 U.S.

21  at 252.

22      In deciding a summary judgment motion, the court must

23  view the evidence in the light most favorable to the non-moving

24  party and draw all justifiable inferences in its favor.  Id. at

25  255.  "Credibility determinations, the weighing of the evidence,

26  and the drawing of legitimate inferences from the facts are jury

27  functions, not those of a judge . . . ruling on a motion for

28  summary judgment . . . ."  Id.

7

1        A.    Disability Discrimination

2             "FEHA makes it an 'unlawful employment practice . . .

3    [f]or an employer, because of the . . . physical disability [or]

4    mental disability . . . of any person, . . . to bar or to

5    discharge the person from employment . . . or to discriminate

6    against the person in compensation or in terms, conditions, or

7    privileges of employment.'"  McCarthy v. R.J. Reynolds Tobacco

8    Co., 819 F. Supp. 2d 923, 934 (E.D. Cal. 2011) (Shubb, J.)

9    (quoting Cal. Gov't Code § 12940(a)).  "To establish a prima

10   facie case of disability discrimination, a plaintiff must show

11   that: [he] (1) suffered from a disability; (2) could perform the

12   essential duties of the job with or without reasonable

13   accommodations, i.e., [he] was a 'qualified individual'; and (3)

14   was subjected to an adverse employment action because of the

15   disability."  Id. (citing Brundage v. Hahn, 57 Cal. App. 4th 228,

16   236 (2d Dist. 1997)).  Defendant contends that plaintiff cannot

17   establish a prima facie case of disability discrimination because

18   plaintiff did not suffer from a disability and was not subject to

19   an adverse employment action.

20             FEHA's definition of disability is broader than that

21   under the federal Americans with Disabilities Act ("ADA").  Rohm

22   v. Homer, 367 F. Supp. 2d 1278, 1284 (N.D. Cal. 2005); see also

23   Colmenares v. Braemar Country Club, Inc., 29 Cal. 4th 1019, 1030

24   (2003) ("FEHA does not require the federal test's substantial

25   limitation of a major life activity.")  Rather, a person has a

26   "physical disability" under FEHA if the person has a physical

27   condition that merely "limits" a "major life activity".  Cal.

28   Gov't Code § 12926(m).  A condition "limits a major life activity

1  if it makes the achievement of the major life activity

2  difficult." Id. § 12926(m)(B)(ii).  The California Code of

3  Regulations clarifies that "major life activities" include, among

4  other things, "caring for oneself, performing manual tasks,

5  seeing, hearing, eating, sleeping, walking, standing, sitting,

6  reaching, lifting, bending, speaking, breathing, learning,

7  reading, concentrating, thinking, communicating, interacting with

8  others, and working."  Cal. Code Regs. tit. 2, § 11065.

9           Although plaintiff no longer experiences the sharp pain

10  that he had while driving a manual transmission vehicle, he has

11  produced evidence showing that he faces limitations in his daily

12  life.  Plaintiff is unable to run.  (Pl.'s Decl. ¶ 4.)  He is

13  limited in his ability to flex and extend his left knee, which

14  affects his ability to walk, stand, squat, climb, and sleep.

15  (Id.)  Plaintiff avers that he is "unable to stand for longer

16  than about 20 to 30 minutes without pain" in his left knee.

17  (Id.)  According to plaintiff's physicians, his condition,

18  patellofemoral chondromalacia, is a thinning of cartilage in the

19  knee that is not likely to improve over time, as even surgery

20  does not always alleviate the symptoms.  (Leonard Decl. Ex. D,

21  Dr. Al-Shaikh Dep. at 28:17-23, 32:21-33:1 (Docket No. 13-4);

22  Pl.'s Dep. at 214:20-218:10, Exs. 32, 33.)  Although this court

23  is not aware of any published authority specifically holding that

24  patellofemoral chondromalacia is a disability for purposes of

25  FEHA, plaintiff at a minimum has established triable issue of

26  fact as to whether his symptoms indicate limitations on "major

27  life activities" that are named in the regulations, including, at

28  the very least, "sleeping, walking, standing, sitting, reaching,

9

1  lifting, [and] bending." Cal. Code Regs. tit. 2, § 11065.  Based

2  on a plain reading of the regulations and viewing the evidence in

3  the light most favorable to plaintiff, a reasonable jury could

4  find that plaintiff's condition constitutes a disability.

5      Defendant's contention that plaintiff's condition is

6  not a disability because it is temporary misses the mark for two

7  reasons.  First, as described above, while some of plaintiff's

8  symptoms have decreased after his transfer to an automatic

9  vehicle, he still submitted sufficient evidence indicating that

10  he experiences residual limitations as a result of the condition.

11  Second, even if plaintiff's condition were temporary, temporary

12  conditions may still qualify as disabilities under FEHA.  See,

13  e.g., Diaz v. Fed. Express Corp., 373 F. Supp. 2d 1034, 1048-53

14  (rejecting contention that temporary condition was not a

15  disability as a matter of law); cf. Sanchez v. Swissport, Inc.,

16  213 Cal. App. 4th 1331, 1340 (2d Dist. 2013) (finding "[b]eing

17  unable to work during pregnancy," a temporary condition, to be a

18  disability under FEHA).  Therefore, the fact that plaintiff does

19  not continue to suffer all of his previous symptoms still permits

20  a finding that he suffered from a disability.

21      Defendant next contends that plaintiff's disability

22  discrimination claim fails because plaintiff has not been subject

23  to an adverse employment action.  Under FEHA, an "adverse

24  employment action" must materially affect the terms, conditions,

25  or privileges of employment.  Yanowitz v. L'Oreal USA, Inc., 36

26  Cal. 4th 1028, 1050-52 (2005).  The California Supreme Court has

27  instructed courts to interpret the phrase "terms, conditions, or

28  privileges of employment" liberally "and with a reasonable

1   appreciation of the realities of the workplace in order to afford

2   employees the appropriate and generous protection against

3   employment discrimination that the FEHA was intended to provide."

4   Id. at 1054.  However, "changes in terms and conditions of

5   employment must be both substantial and detrimental to be

6   actionable."  Horsford v. Bd. of Trs. Of Cal. State Univ., 132

7   Cal. App. 4th 359, 373 (5th Dist. 2005).  Courts must therefore

8   distinguish between "[m]inor or relatively trivial adverse

9   actions or conduct by employers or fellow employees that, from an

10  objective perspective, are reasonably likely to do no more than

11  anger or upset an employee" and "adverse treatment that is

12  reasonably likely to impair a reasonable employee's job

13  performance or prospects for advancement or promotion."

14  Yanowitz, 36 Cal. 4th at 1054-55.

15         Here, the court cannot conclude as a matter of law

16  that plaintiff's being required to use his leave benefits in

17  order to stay employed did not constitute an adverse employment

18  action.  For example, plaintiff avers that he risked exhausting

19  his leave benefits and that he would have been subject to

20  discipline in the event of illness or other instances that

21  required use of the leave time.  (See Pl.'s Decl. ¶ 5 ("[I]f I

22  had become ill or needed to take time off and did not have these

23  benefits I would have been subject to discipline.").)  Moreover,

24  the extent of economic harm suffered by plaintiff from the

25  arrangement is unclear.  Although plaintiff has not received a

26  pay cut since his November 2010 injury and has even seen pay

27  increases since the injury, (Pl.'s Dep. at 111:17-112:2),

28  plaintiff also testified at his deposition that he suffered a

1    reduced income and lost wages, (id. at 253:5-19).  Because the

2    trier of fact might find that defendant's acts negatively

3    impacted plaintiff's compensation, a triable issue of fact thus

4    remains as to whether defendant subjected plaintiff to an adverse

5    employment action.  Cf. Fonseca v. Sysco Food Servs. of Arizona,

6    Inc., 374 F.3d 840, 847 (9th Cir. 2004) (finding, for purposes of

7    employment discrimination claim under federal law, "that an

8    adverse employment action exists where an employer's action

9    negatively affects its employee's compensation").

10           Finally, although defendant contends that it was merely

11   plaintiff's choice to miss work on days when an automatic

12   transmission truck was unavailable, a jury could find that

13   plaintiff's actions were a reasonable response to defendant's

14   failure to accommodate, and therefore defendant's actions were

15   "reasonably likely to impair a reasonable employee's job

16   performance or prospects for advancement or promotion."

17   Yanowitz, 36 Cal. 4th at 1054-55.  Accordingly, because disputed

18   issues of material fact remain as to whether plaintiff was

19   subjected to an adverse employment action because of his

20   disability, the court must deny defendant's motion for summary

21   judgment on plaintiff's claim of disability discrimination.

22           B.   Failure to Accommodate

23           "FEHA provides that it is an 'unlawful employment

24   practice . . . for an employer . . . to fail to make reasonable

25   accommodation for the known physical or mental disability of an

26   applicant or employee.'"  Watkins v. Ameripride Servs., 375 F.3d

27   821, 828 (9th Cir. 2004) (quoting Cal. Gov't Code § 12940(m)).

28   "A reasonable accommodation may include '[j]ob restructuring,

1 reassignment to a vacant position, part-time or modified work

2 schedules, acquisition or modification of equipment or devices,

3 adjustment or modification of examinations, training materials or

4 policies . . . and other similar actions." Id. (quoting Cal.

5 Code Regs. tit. 2, § 7293.9(a)(2)).

6       To prevail on summary judgment on a claim of failure to

7 reasonably accommodate, an employer must establish through

8 undisputed facts that: (1) "reasonable accommodation was offered

9 and refused," (2) "that 'there simply was no vacant position

10 within the employer's organization for which the disabled

11 employee was qualified and which the disabled employee was

12 capable of performing with or without accommodation,'" or (3)

13 "that 'the employer did everything in its power to find a

14 reasonable accommodation, but the informal interactive process

15 broke down because the employee failed to engage in discussions

16 in good faith.'" Dep't of Fair Emp't & Hous. v. Lucent Techs.,

17 Inc., 642 F.3d 728, 743-44 (9th Cir. 2011) (quoting Jensen v.

18 Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2d Dist. 2000)).

19       Defendant first contends that it provided a reasonable

20 accommodation whenever one was required.  The parties do not

21 dispute that defendant sufficiently provided accommodation when

22 it granted plaintiff leaves of absence between December 2010 and

23 February 2011 and when defendant provided an automatic vehicle

24 starting in February 2012.  A previous successful accommodation

25 does not absolve an employer's later failure to provide

26 reasonable accommodation, however.  See A.M. v. Albertsons, LLC,

27 178 Cal. App. 4th 455, 465 (1st Dist. 2009) (finding single

28 failure to accommodate despite other successful accommodations

1   actionable as a matter of law).  The parties dispute whether an

2   automatic vehicle was medically necessary during the period

3   between February 2011 and February 2012.

4          On March 2, 2011, Dr. Al-Shaikh evaluated plaintiff and

5   issued a note that said plaintiff could "[r]eturn to full duty

6   with no limitations or restrictions" but also that plaintiff

7   "will require an automatic truck."  (Pl.'s Dep. Ex 22).  Because

8   of the alleged ambiguity in the note regarding plaintiff's

9   ability to drive a manual transmission truck, defendant's Risk

10  Management Supervisor Courtney Bullen contacted plaintiff to

11  obtain his understanding.  (Bullen Decl. ¶ 5.)  Plaintiff,

12  concerned that he would be pulled off duty while driving a manual

13  transmission truck, expressed that it was his understanding that

14  Dr. Al-Shaikh's statement was a recommendation that plaintiff

15  only drive automatic trucks, and that plaintiff was medically

16  able to drive manual transmission trucks.  (Id.; Pl.'s Dep. at

17  170:6-174:19.)

18         On March 15, plaintiff delivered a letter to defendant,

19  requesting that he be provided with an automatic transmission

20  vehicle.  (Pl.'s Dep. at 111:11-14, 179:19-180:13, 181:4-9, Ex.

21  26.)  That day, however, Dr. Al-Shaikh submitted a revised note

22  after Bullen contacted him for clarification.  (Bullen Decl. ¶

23  5.)  The note stated that plaintiff could "[r]eturn to full duty

24  with no limitations or restrictions" but that Dr. Al-Shaikh

25  "recommend[ed] an automatic truck."  (Id. Ex. 2.)  Dr. Al-Shaikh

26  later testified that he did not understand the difference between

27  a "restriction" and a "recommendation."  (Al-Shaikh Dep. at

28  15:23-16:4, 20:5-23.)

1   Defendant contends that because these restrictions were

2   ambiguous, and phrased as "recommendations," plaintiff did not

3   have a medical need for an accommodation.  Defendant presents no

4   authority requiring that a requested accommodation be termed as a

5   "restriction" rather than a "recommendation."  To the contrary,

6   "[t]he statute does not require the plaintiff to speak any magic

7   words before he is subject to its protections."  Prilliman v.

8   United Air Lines, Inc., 53 Cal. App. 4th 935, 954 (2d Dist. 1997)

9   (quoting Schmidt v. Safeway Inc., 864 F. Supp. 991, 1007 (D. Or.

10  1994)); see also Gelfo v. Lockheed Martin Corp., 140 Cal. App.

11  4th 34, 62 n.22 (2d Dist. 2006) ("Although it is the employee's

12  burden to initiate the process, no magic words are necessary, and

13  the obligation arises once the employer becomes aware of the need

14  to consider an accommodation.").  There is no basis to require

15  any "magic words" from plaintiff's physicians, either, and courts

16  have found doctors' "recommendations" of job modifications

17  sufficient to trigger an employer's duty to engage in an

18  interactive process to identify and implement reasonable

19  accommodations.  See, e.g., Diaz, 373 F. Supp. 2d. at 1062

20  (holding that doctor's recommendation of transfer is sufficient

21  to obligate defendant to engage in interactive process);

22  Bultemeyer v. Fort Wayne Comty. Schls., 100 F.3d 1281, 1282,

23  1285-86 (7th Cir. 1996) (finding doctor's informal recommendation

24  in medical note sufficient to trigger employer's duty to engage

25  in interactive process under ADA); cf. Jensen, 85 Cal. App. 4th

26  at 265-66 (noting employer was entitled to consider plaintiff's

27  informal requests as "restrictions" during the interactive

28  process).

1          Moreover, the facts show that defendant itself

2     considered the question of required accommodations open even

3     after receiving Dr. Al-Shaikh's second report recommending the

4     automatic truck.  The process was clearly still ongoing, as

5     defendant's then-Area Human Resources Manager Keisha Lee Cavil

6     contacted plaintiff on March 30, 2011, to inform him that

7     defendant would send documents for plaintiff to submit further

8     information regarding plaintiff's requested accommodation.

9     (Cavil Decl. ¶ 4.)  Defendant sent a letter with those forms

10    later that day.  (Pl.'s Dep. at 182:10-25, Ex. 27.)  Thus,

11    defendant's own actions indicate that there was at least

12    uncertainty as to whether plaintiff had a medical basis for his

13    requested accommodation.

14         Whether phrased as restriction or recommendation, there

15    is, at minimum, a disputed issue of material fact as to whether

16    plaintiff had a medical need for an automatic vehicle.

17    Therefore, summary judgment would be improper on this basis.

18         Defendant next contends any failure to reasonably

19    accommodate was due to plaintiff's abandoning the interactive

20    process.  An employer may prevail on summary judgment on a claim

21    of failure to reasonably accommodate if the employer can

22    establish through undisputed facts "that 'the employer did

23    everything in its power to find a reasonable accommodation, but

24    the informal interactive process broke down because the employee

25    failed to engage in discussions in good faith.'"  Lucent Techs.,

26    642 F.3d at 743-44 (quoting Jensen, 85 Cal. App. 4th at 263).

27         A plaintiff may be responsible for a breakdown in the

28    interactive process when he or she fails to provide necessary

16

information for the defendant to assess the possibility of accommodation.  See Bower v. City & County of San Francisco, No. C 09-03507 CRB, 2011 WL 569882, at *7 (N.D. Cal. Feb. 14, 2011) (granting summary judgment for defendant on failure to accommodate claim under ADA when plaintiff "was specifically provided with a Reasonable Accommodation request form and he declined to fill it out"); Houston v. Regents of Univ. of Cal., No. C 04-4443 PJH, 2006 WL 1141238, at *31 (N.D. Cal. May 1, 2006) (granting summary judgment on failure to accommodate and failure to engage in interactive process claims when defendant made multiple steps to engage in interactive process but plaintiff failed to respond to requests for documentation).

It is undisputed that plaintiff refused to submit documentation of his disability in the manner requested by defendant.  Plaintiff admits he did not fill out defendant's accommodations packet until February 2012, (Pl.'s Dep. at 226:15-227:3, Ex. 38), and admits that defendant informed him multiple times in March and April 2011 that defendant could not proceed with the interactive process without the required paperwork, (id. at 189:1-19, 190:11-191:10, 204:21-206:14).  The interactive process appears to have broken down in late April or early May 2011, when defendant mailed plaintiff a letter informing him that it would no longer process his request because plaintiff had not submitted the proper information, and plaintiff's subsequent phone call to Cavil to follow up ended abruptly.  (Id. at 208:7-210:11.)

Disputed issues of fact remain, however, as to whether plaintiff's refusals were made in bad faith.  Plaintiff had

17

1    concerns that defendant's accommodations forms violated his

2    privacy rights, referenced federal rather than state law, and

3    inaccurately reflected his job description.  (Id. at 184:16-

4    188:25.)  He expressed those concerns to defendant multiple times

5    through March and April 2011.  (Id. at 190:2-25, 194-:16-195:2,

6    Ex. 29.)  Plaintiff also believed that his March 15 letter

7    sufficed to express his desired accommodation, that defendant was

8    already in possession of his medical records, (Id. at 206:15-

9    207:20), and that defendant's required procedure was intrusive

10   and superfluous on top of the medical information he had already

11   provided, (see, e.g., id. Ex. 29).  Although plaintiff could have

12   done more and certainly deserves a large share of the blame for

13   the breakdown of the process, the undisputed facts do not support

14   a finding that plaintiff acted in bad faith.

15        Moreover, it is not clear whether defendant "did

16   everything in its power to find a reasonable accommodation."

17   Lucent Techs., 642 F.3d at 743-44.  Defendant's insistence on a

18   particular procedure does not absolve it of responsibility to

19   accommodate plaintiff, and defendant's requests for more

20   information were a matter of form rather than substance.  See

21   Roberts v. Boeing Co., No. CV 05-6813 FMC, 2006 WL 4704616, at

22   *12 (C.D. Cal. Sept. 8, 2006) ("The Court can find no support . .

23   .  for the defendant's contention that demanding an employee to

24   'submit medical documentation satisfactory to the Company'

25   qualifies as engaging in the interactive process."); King v.

26   United Parcel Serv., Inc., 152 Cal. App. 4th 426, 444 (3d Dist.

27   2007) ("We recognize that the interactive process compelled by

28   FEHA requires flexibility by both the employer and employee, and

18

1   that no magic words are required to necessitate accommodation."").

2   The evidence shows that, unlike the defendant in <u>Houston</u>, 2006 WL

3   1141238, at *30, defendant already had access to some medical

4   records documenting plaintiff's knee condition, but did not

5   follow up with plaintiff's doctors after plaintiff made his

6   request, (Cavil Dep. at 29:14-17).  And, unlike the plaintiffs in

7   <u>Bower</u>, 2011 WL 569882, at *7, plaintiff was explicit in the form

8   of accommodation he sought--a truck with an automatic

9   transmission.

10          Finally, although defendant eventually accepted

11   plaintiff's forms with modifications, it did not make this

12   possibility clear to plaintiff when the process broke down in

13   2011.  (<u>See</u> Pl.'s Dep. at 191:21-192, 194:1-5 (testifying that

14   requests to modify accommodation packet received "no response"

15   and were "[j]ust ignored").)  Defendant concedes that it was

16   willing to accept an incomplete form limited to "what [plaintiff]

17   was comfortable filling out" but did not express this to

18   plaintiff.  (Cavil Dep. at 30:7-15.)  Therefore, while it is

19   clear that plaintiff's actions substantially contributed to the

20   breakdown of the interactive process, the undisputed facts do not

21   show that defendant "did "everything in its power to find a

22   reasonable accommodation."  <u>Lucent Techs.</u>, 642 F.3d at 743-44

23          In sum, disputed issues of material fact remain as to

24   whether plaintiff had a medical basis for his request of

25   accommodation in the form of an automatic vehicle.  Further,

26   although there is evidence supporting a finding that defendant

27   acted in good faith, summary judgment requires undisputed facts

28   showing that plaintiff acted in bad faith while defendant did

1   everything in its power to find a reasonable accommodation.

2   Interpreting the evidence in the light most favorable to

3   plaintiff, the facts do not support such a determination here.

4   Accordingly, the court must deny defendant's motion for summary

5   judgment on plaintiff's reasonable accommodation claim.

6          C.   Failure to Engage in an Interactive Process

7          FEHA also recognizes a separate claim for an employer's

8   failure to engage in an interactive process, making it "an

9   unlawful employment practice . . . [f]or an employer . . . to

10  fail to engage in a timely, good faith, interactive process with

11  the employee . . . to determine effective reasonable

12  accommodations, if any, in response to a request for reasonable

13  accommodation by an employee . . . with a known physical or

14  mental disability." Lucent Techs., 642 F.3d 728, 742-43 (9th

15  Cir. 2011) (quoting Cal. Gov't Code § 12940(n)).  "[T]he

16  interactive process requires communication and good-faith

17  exploration of possible accommodations between employers and

18  individual employees with the goal of identify[ing] an

19  accommodation that allows the employee to perform the job

20  effectively." Id. (quoting Nadaf-Rahrov v. Neiman Marcus Grp.,

21  Inc., 166 Cal. App. 4th 952, 984 (1st Dist. 2008)).  "'[C]ourts

22  should attempt to isolate the cause of the breakdown [in the

23  interactive process] and then assign responsibility' so that

24  "[l]iability for failure to provide reasonable accommodations

25  ensues only where the employer bears responsibility for the

26  breakdown.'" Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1115 (9th

27  Cir. 2000) rev'd on other grounds, 535 U.S. 391 (2002).

28         This claim involves many of the same considerations as

20

1   plaintiff's reasonable accommodation claim.  As explained above,

2   disputed issues of material fact remain as to which party bears

3   responsibility for the breakdown in the interactive process.

4   Accordingly, the court must deny defendant's motion for summary

5   judgment on plaintiff's failure to engage in an interactive

6   process claim.

7          D.   Punitive Damages

8          Defendant also moves for summary adjudication on

9   plaintiff's prayer for punitive damages.  "Under California law,

10  the entitlement to punitive damages against an employer . . .

11  hinges on proof, by clear and convincing evidence, that an

12  'officer, director or managing agent' of the company perpetrated

13  or knowingly ratified conduct amounting to malice oppression or

14  fraud."  DesRosiers v. Hartford, --- F. Supp. 2d. ----, No. 2:09-

15  CV-2057-MCE-GGH, 2013 WL 5406875, at *14 (E.D. Cal. Sept. 25,

16  2013) (quoting Cal. Civ. Code § 3294(b)).  In his Opposition

17  brief, plaintiff agreed to no longer seek punitive damages.

18  (Opp'n at 20:17-18 (Docket No. 15).)  Accordingly, the court will

19  grant defendant's motion for summary adjudication as it pertains

20  to plaintiff's prayer for punitive damages.

21          IT IS THEREFORE ORDERED that defendant's motion for

22  summary judgment be, and the same hereby is, GRANTED as to

23  plaintiff's prayer for punitive damages, and DENIED in all other

24  respects.

25  Dated:  January 28, 2014

26  _____

27  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

28